UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SHELBY MCKEE,

           Plaintiff,                  Case No. 2:20-cv-12211
                                     District Judge Paul D. Borman
v.                                   Magistrate Judge Anthony P. Patti

COMMISSIONER OF
SOCIAL SECURITY
ADMINISTRATION,

           Defendant.

_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION TO DENY PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (ECF No. 18), GRANT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF No. 19) and AFFIRM THE COMMISSIONER'S DECISION

**I.**    **RECOMMENDATION**:  For the reasons that follow, it is

**RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary

judgment (ECF No. 18), **GRANT** Defendant's motion for summary judgment

(ECF No. 19), and **AFFIRM** the Commissioner's decision.

**II.**    **REPORT**

Plaintiff Shelby McKee brings this action under 42 U.S.C. § 405(g) and 42

U.S.C. § 1383(c)(3) for review of a final decision of the Commissioner of Social

Security (Commissioner) denying her applications for Disability Insurance (DI)

benefits and Supplemental Security Income (SSI).  This matter is before the United

States Magistrate Judge for a Report and Recommendation on Plaintiff's motion

for summary judgment (ECF No. 18), the Commissioner's cross-motion for

summary judgment (ECF No. 19), Plaintiff's reply (ECF No. 20), and the

administrative record (ECF No. 13).

## A.   Background and Administrative History

In her July 16, 2018 applications for disability insurance benefits (DIB) and

SSI, Plaintiff alleges her disability began on June 15, 2015, at the age of 21.  (ECF

No. 13, PageID.211-224.)  In her disability report, she lists depression, anxiety,

paranoia, and migraines as limiting her ability to work.  (ECF No. 13,

PageID.241.)  Her applications were denied on January 16, 2019.  (ECF No. 13,

PageID.113-116.)

Plaintiff requested a hearing by an Administrative Law Judge (ALJ).  (ECF

No. 13, PageID.206-210.)  On June 11, 2019, ALJ Crystal L. White-Simmons held

a hearing, at which Plaintiff, with a non-attorney representative, and a vocational

expert (VE), Dewey Franklin, testified.  (ECF No. 13, PageID.67-86.)  On August

26, 2019, ALJ White-Simmons issued an opinion, which determined that Plaintiff

was not disabled within the meaning of the Social Security Act.  (ECF No. 13,

PageID.50-66.)

Plaintiff submitted a request for review of the hearing decision/order.  (ECF

No. 13, PageID.206-210.)  However, on June 15, 2020, the Appeals Council

denied Plaintiff's request for review.  (ECF No. 13, PageID.39-44.)  Thus, ALJ White-Simmons's decision became the Commissioner's final decision.

Plaintiff timely commenced the instant action on August 17, 2020.  (ECF No. 1.)

### B.    Plaintiff's Medical History

The administrative record contains approximately 223 pages of medical records, which were available to the ALJ at the time of her August 26, 2019 decision.  (ECF No. 13, PageID.302-525 [Exhibits 1F-7F].)  These materials will be discussed in detail, as necessary, below.

### C.    The Administrative Decision

Pursuant to 20 C.F.R. § 404.1520(a)(4); 416.920(a)(4), at **Step 1** of the sequential evaluation process, the ALJ found that Plaintiff had engaged in substantial gainful activity since June 15, 2015, her alleged onset date, with a date last insured (DLI) of September 30, 2016.  (ECF No. 13, PageID.53,55.)  At **Step 2**, the ALJ found that Plaintiff had the following severe impairments: depression, anxiety, dysthymic disorder, social phobia, and panic disorder with agoraphobia. (ECF No. 13, PageID.55-56.)  At **Step 3**, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.  (ECF No. 13, PageID.56-57.)  **Between**

3

**Steps 3 and 4** of the sequential process, the ALJ evaluated Plaintiff's residual

functional capacity (RFC)[1] and determined that Plaintiff had the RFC:

> to perform a full range of work at all exertional levels but with the
> following nonexertional limitations: the claimant is limited to simple
> and routine tasks; no interaction with the public; brief and superficial
> interaction with coworkers; no production rate or pace work; and
> work in a low stress environment, defined as having only occasional
> decision-making and occasional changes in the work setting.

(ECF No. 13, PageID.57-61.) At **Step 4**, the ALJ determined that Plaintiff had no

past relevant work. (ECF No. 13, PageID.61.) At **Step 5**, considering Plaintiff's

age, education, work experience, and RFC, the ALJ determined that there were

jobs that existed in significant numbers in the national economy that Plaintiff could

perform, such as car detailer, housekeeper, and parts inspector. (ECF No. 13,

PageID.62-63.) The ALJ therefore concluded that Plaintiff had not been under a

disability, as defined in the Social Security Act, since June 15, 2015. (ECF No. 13,

PageID.63.)

### D.    Standard of Review

The District Court has jurisdiction to review the Commissioner's final

administrative decision pursuant to 42 U.S.C. § 405(g). When reviewing a case

under the Social Security Act, the Court "must affirm the Commissioner's decision

---

[1] The claimant's "residual functional capacity" is an assessment of the most the
claimant can do in a work setting despite his or her physical or mental limitations.
20 C.F.R. §§ 404.1545(a), 416.945(a); *Howard v. Comm'r of Soc. Sec.*, 276 F.3d
235, 239 (6th Cir. 2002).

4

if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "[s]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health and Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)). In deciding whether substantial evidence supports the ALJ's decision, the Court does "not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that

5

would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).  Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

### E.    Analysis

Plaintiff argues that: (1) the ALJ erred by crediting the opinion of State agency reviewer Jerry Csokasy, Ph.D., but failing to explain why she did not include in the RFC his finding that Plaintiff had moderate limitations regarding social interaction with supervisors; and (2) the ALJ erred in finding unpersuasive the opinion of Dr. Ghulam Qadir and Huda Zenati, Ph.D.  (ECF No. 18, PageID.540-548; ECF No. 20, PageID.574-580.)  The Commissioner opposes Plaintiff's motion, arguing that Plaintiff has failed to show any error in the ALJ's mental RFC finding, and that the ALJ appropriately evaluated the subject medical opinions.  (ECF No. 19, PageID.556-573.)  For the reasons that follow, I agree with the Commissioner.

### 1.    RFC determination

6

The Plaintiff bears the burden of proof at Steps 1-4, including proving her RFC. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) ("[D]uring the first four steps, the claimant has the burden of proof; this burden shifts to the Commissioner only at Step Five.") (citing *Young v. Sec'y of Health and Human Servs.*, 925 F.2d 146, 148 (6th Cir. 1990)); *see also Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 423 (6th Cir. 2008) ("The claimant, however, retains the burden of proving her lack of residual functional capacity."). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform[.]" *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391-92 (6th Cir. 1999).

Plaintiff's RFC is "the most [she] can still do despite the physical and mental limitations resulting from her impairments." *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 155 (6th Cir. 2009); *see also* 20 C.F.R. § 404.1545(a). The determination of Plaintiff's RFC is an issue reserved to the Commissioner and must be supported by substantial evidence. 20 C.F.R. § 404.1527(d)(2). Pursuant to Social Security Rule (SSR) 96-8p, the RFC assessment must include:

> [A] narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the

7

> evidence available in the case record.  The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

SSR 96-8p, 1996 WL 374184, at *7.  "The ALJ need not decide or discuss uncontested issues, 'the ALJ need only articulate how the evidence in the record supports the RFC determination, discuss the claimant's ability to perform sustained work-related activities, and explain the resolution of any inconsistencies in the record.'"  *Delgado v. Comm'r of Soc. Sec.*, 30 F. App'x 542, 548 (6th Cir. 2002) (citation omitted).

> ### 2. The Court should find no error in the ALJ's mental RFC assessment

> #### a. Moderate limitation in ability to work with others

State agency reviewer Dr. Csokasy evaluated Plaintiff's mental health records and completed two "Mental Residual Functional Capacity [MRFC] Assessments," in which he found that Plaintiff was <u>moderately limited</u> in her ability to interact appropriately with the general public and to accept instructions and respond appropriately to criticism from supervisors, but <u>not significantly limited</u> in the ability to, *inter alia*: get along with coworkers or peers without distracting them or exhibiting behavioral extremes, ask simple questions or request assistance, maintain socially appropriate behavior and adhere to basis standards of neatness and cleanliness, make simple work-related decisions, and, sustain an ordinary routine without special supervision.  (ECF No. 13, PageID.97, 110.)  In

the narrative discussion portion explaining these findings, Dr. Csokasy wrote,

"[C]lmt needs environment with occasional contact with others."  (ECF No. 13,

PageID.97, 110.)  And for the MRFC "Additional Explanation," he stated, "Clmt is

able to perform simple/routine tasks on a sustained basis in environment with

occasional contact with others."  (ECF No. 13, PageID.97, 110.)

> The ALJ found Dr. Csokasy's opinion persuasive, stating:
>
> Jerry Csokasy, Ph.D., evaluated the claimant's mental health records
> on behalf of the State agency and found that the claimant retains the
> mental capacity to perform simple, routine tasks on a sustained basis
> in an environment with occasional contact with others (1A/11;
> 2A/11).  Dr. Csokasy's opinion is persuasive because he supports his
> opinion with a discussion of the medical evidence and his opinion is
> consistent with the record as a whole.

(ECF No. 13, PageID.61.)  She then limited Plaintiff to no interaction with the

public and only brief and superficial interaction with coworkers.  (ECF No. 13,

PageID.57.)

Plaintiff argues that because the ALJ found persuasive Dr. Csokasy's

opinion, and Dr. Csokasy found that she was moderately limited in her ability to

accept instruction and respond appropriately to criticism from supervisors, the ALJ

should have either included such a limitation in the RFC assessment, or adequately

explained her decision not to do so.  (ECF No. 18, PageID.540-545; ECF No. 20,

PageID.574-578.)  Thus, she asserts, remand is "required so that the ALJ may

properly consider the opinion of Dr. Csokasy and provide an explanation that

9

allows for meaningful review." (ECF No. 18, PageID.544.)  In so doing, she acknowledges that even where an ALJ gives great weight to a medical opinion, the ALJ is not required to incorporate into the RFC all of the limitations in that opinion (*see* ECF No. 18, PageID.544; ECF No. 20, PageID.578 (citing *Reeves v. Comm'r of Soc. Sec.*, 618 F. App'x 267, 275 (6th Cir. 2015)), but cites to case law holding that in such a situation, the ALJ must explain why he or she declined to do so (ECF No. 18, PageID.541-544).

Although Plaintiff's arguments are well taken here, and the administrative opinion is worthy of some criticism, I conclude that Plaintiff has failed to establish harmful error, that the ALJ has "'provide[d] an accurate and logical bridge between the evidence and the result[,]'" and that the appellate record "'permit[s] meaningful review' of the ALJ's application of the rules." (ECF No. 18, PageID.548 (quoting *Gross v. Comm'r of Soc. Sec.*, 247 F.Supp.3d 824, 829 (E.D. Mich. 2017) and *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).)  First, as Defendant points out (ECF No. 19, PageID.558-559), Dr. Csokasy noted a moderate limitation in Plaintiff's ability to accept instructions and respond appropriately to criticism from supervisors in the "checklist" or questionnaire portion of the Mental RFC Assessment form (ECF No. 13, PageID.97, 110).  But the form contains the following statement:

> The questions below help determine the individual's ability to perform sustained work activities.  However, the actual mental

10

> residual functional capacity assessment is recorded in the narrative
> discussion(s), which describes how the evidence supports each
> conclusion.

(ECF No. 13, PageID.96, 109.)  And the narrative portions of the MRFC

assessment (ECF No. 13, PageID.97, 100) only refer generally to Plaintiff's ability

to have contact with others.  *See Mutz v. Comm'r of Soc. Sec.*, No. 2:18-cv-13703,

2019 WL 5677671, at *2 (E.D. Mich. Oct. 31, 2019) ("The Disability

Determination Explanation form that Dr. Newhouse prepared cautions that '[t]he

questions below help determine the Individual's ability to perform sustained work

activities.  However, the actual mental residual functional capacity assessment is

*recorded in the narrative discussion(s)*, which describe how the evidence supports

each conclusion.'  ECF 9-3, PgID 89-90 (emphasis added); *see also Shoup v.

Comm'r of Soc. Sec.*, No. 1:16-CV-581, 2017 WL 2240511, at *6 (W.D. Mich.

Mar. 23, 2017) (recognizing the same RFC assessment form disclaimer).").[2]

---

[2] In *Krystal v. Saul*, No. 19 C 2696, 2020 WL 6134983, at *7 (N.D. Ill. Oct. 19,
2020), cited by Plaintiff (ECF No. 18, PageID.542-543), the Northern District of
Illinois stated, "The ALJ may not ignore Drs. Tin's and Biscardi's findings
addressed in the checked boxes of Section I of the Mental RFC Assessments.
*Varga* [*v. Colvin*], 794 F.3d [809,] 816 [(7th Cir. 2015)] ('Worksheet observations,
while perhaps less useful to an ALJ than a doctor's narrative RFC assessment, are
nonetheless medical evidence which cannot just be ignored.').")  But this case is
less persuasive than *Mutz*, as it is out of district, and Plaintiff has not established
that ALJ White-Simmons ignored the listed findings in Dr. Csokasy's Mental RFC
Assessment.

It is somewhat curious, as Plaintiff asserts (ECF No. 20, PageID.575-575), that the ALJ chose to include restrictions on Plaintiff's interactions with the public and coworkers, but not supervisors (ECF No. 13, PageID.57), as the narrative portions of Dr. Csokasy's Mental RFC Assessment also do not specifically mention the public or coworkers, and as Dr. Csokasy found Plaintiff moderately limited in the ability to interact with supervisors, but not significantly limited in her ability to interact with coworkers (ECF No. 13, PageID. 97, 110).  But that alone does not establish error, as she appears to have reviewed the entire record, including Plaintiff's testimony, medical records, and all of the available medical opinions (ECF No. 13, PageID.57-61), and did not rely solely on Dr. Csokasy's Assessment to formulate Plaintiff's RFC.

I am also persuaded by Defendant's argument that a doctor's finding, on an RFC assessment form, that a claimant is "moderately limited" in a particular area, does not amount to a specific limitation which should be included in the RFC. (*See* ECF No. 19, PageID.559.)  In *Carlson v. Colvin*, No. 14-10900, 2015 WL 12670502, at *21 (E.D. Mich. Jan. 29, 2015), report and recommendation adopted 2015 WL 12684334 (E.D. Mich. Feb. 24, 2015), cited by Defendant, this Court found that the ALJ did not "err by failing to include in the RFC a specific limitation regarding Plaintiff's interaction with supervisors,"  and explained:

> Plaintiff again relies on Dr. Head's [Mental RFC Assessment] form, which reported Plaintiff was moderately limited in accepting

> instructions and responding appropriately to criticism from
> supervisors.  This argument is even weaker than those above, because
> moderate limitations on the form only indicate the bare existence of
> an impairment, not the extent of the limitations it imposes.  Moreover,
> the term "moderate" does not provide useful information for
> formulating an RFC.  Finally, the ALJ appropriately cited the
> reviewing physician's opinion that Plaintiff had no significant
> limitations in this area.

(internal citations omitted).  *See also Dunn v. Comm'r of Soc. Sec.*, No. 19-13133,

2020 WL 7700614, at *10 (E.D. Mich. Nov. 30, 2020), report and recommendation

adopted 2020 WL 7695900 (E.D. Mich. Dec. 28, 2020) ("A moderate limitation is

one in which 'your functioning in this area independently, appropriately,

effectively, and on a sustained basis is fair.'  20 C.F.R., Part 404, Subpart P,

Appendix 1, § 12.00(F)(2)(c).").  And Plaintiff's argument in response does not

change this assessment.  She asserts that the definition of "moderate" in the mental

health arena diverges from the ordinary usage of "fair" (ECF No. 20, PageID.576-

577), but the cases cited above likewise involved mental health impairments.

Consistent with these prior opinions, the Court should conclude that Dr. Csokasy's

finding of a moderate limitation in Plaintiff's ability to interact appropriately with

supervisors did not amount to a limitation insofar as requiring inclusion in

Plaintiff's RFC or further explanation by the ALJ for the lack of inclusion.

### b.    Persuasive weight given to Dr. Csokasy's opinion

This conclusion also undermines Plaintiff's argument that the ALJ erred by

failing to explain her decision not to include in the RFC the supervisory social

limitations offered by Dr. Csokasy, despite affording persuasive weight to his opinion.  (*See* ECF No. 18, PageID.540-545; ECF No. 20, PageID.574-578.) Plaintiff cites SSR 96-8p for the proposition that if an RFC conflicts with an opinion from a medical source, the ALJ must explain why the opinion was not adopted (ECF No. 18, PageID.542-544; ECF No. 20, PageID.575-576), but in line with its previous reasoning, the Court need not conclude that the ultimate RFC conflicts with Dr. Csokasy's opinion.  Further, Plaintiff cites several cases in which courts have reasoned that where an ALJ finds a medical opinion persuasive, but does not include in the RFC a limitation from that opinion, he or she is required to explain why.  (ECF No. 18, PageID.542-544.)  But none are binding, as they are unpublished and out of district.  And should the Court agree that Dr. Csokasy's opinion contained no specific limitation regarding Plaintiff's ability to interact with supervisors, it should find no error on this basis.

### c.   Harmless error, if any

Moreover, and perhaps most importantly, even if the ALJ erred by failing to include a restriction on Plaintiff's interaction with supervisors in the RFC, the Court should find such error harmless.  Plaintiff argues that it is the Commissioner's burden of proof at Step Five, and that common sense would dictate that a limited ability to interact with supervisors would erode the vocational base.  (ECF No. 20, PageID.574.)  But, as Defendant asserts (ECF No. 19,

PageID.560, 562), the DOT has classified the jobs listed by the ALJ at Step Five as people "not significant."  *See* 1991 WL 687878; 1991 WL 672783; 1991 WL 681502.  In reply, Plaintiff contends:

> The Commissioner argues that the step five determination was not in error as all jobs are classified as "not significant" with people.  First of all, the DOT does not contain a definition as to the social interactions, it is the selected characteristics of occupations ("SCO"), the companion to the DOT.  In the SCO, dealing with people is listed as "8" which is taking-instructions-helping. . . .  This definition is specifically "attending to the work assignment instructions or orders of supervisor" which of course appears to be an obvious conflict with the interaction with supervisors.

(ECF No. 20, PageID.577-578.)  However, the DOT references "8 – Taking Instructions-Helping[,]" and says "not significant" under the subject job classifications, so Plaintiff's argument is unavailing.  *See Krikorian v. Comm'r of Soc. Sec.*, No. 15-14128, 2017 WL 990794, at *8 (E.D. Mich. Jan. 2, 2017), report and recommendation adopted, 2017 WL 976791 (E.D. Mich. Mar. 14, 2017) ("While it is true that the RFC did not contain a restriction on interactions with supervisors, the jobs of production worker and production worker/helper as described by the DOT, do not require 'extensive,' *i.e.*, unusually frequent interaction with supervisors or anyone else.  Because none of the production-related job findings require 'extensive' interaction with others, the ALJ's omission of reference to supervisors is, at most, harmless error.") (internal citations omitted); *Dunn*, 2020 WL 7700614, at *10.

15

**3.     The Court should also reject Plaintiff's argument that the
ALJ afforded insufficient weight to the opinion of Drs.
Qadir and Zenati**

Plaintiff also argues that the ALJ failed to articulate why the opinion of Drs.

Qadir and Zenati finding extreme limitations in her ability to get along with others

was inconsistent with the record.

**a.     Medical Source Statement by Drs. Qadir and Zenati**

In May 2019, Dr. Zenati, Plaintiff's psychotherapist, and Dr. Qadir,

Plaintiff's psychiatrist, completed a Medical Source Statement (MSS), listing

Plaintiff's prognosis as "poor."  (ECF No. 13, PageID.520.)  They indicated, in

check-box format, an extreme limitation (defined as having no ability to function

in the area) in Plaintiff's ability to interact with others (ECF No. 13, PageID.521),

and stated that she lives with her mother, spends all of her time at home, does not

socialize with others, stopped talking to her online friend, and is very anxious

around others (ECF No. 13, PageID.20-521, 523).  They further opined that

Plaintiff could not work full-time due to her mental health issues.  (ECF No. 13,

PageID.524.)

**b.     The ALJ found the opinion "not persuasive"**

The ALJ found the opinion "not persuasive," stating:

Huda Zenati, Ph.D., the claimant's psychotherapist, and Ghulam
Qadir, M.D., her psychiatrist, completed a May 2019 questionnaire
(7F).  They state that the claimant experiences "extreme" limitations
in her abilities to interact with others and engage in tasks around

others; and "marked" limitations in her abilities to concentrate and manage herself (7F/3). They state that the claimant is confused, has memory problems, and will likely be off-task more than 20 percent of the workday, and absent from work more than four days per month (7F/6, 7). They conclude that the claimant is "unemployable" (7F/7). The opinions of Drs. Zenati and Qadir are not persuasive. The extreme limitations they describe are not reflected in the medical record, and are inconsistent with their own mental status examinations, which consistently describe the claimant as demonstrating normal memory and normal attention and concentration (3F/6, 13, 18, 23, 28, 33, 39, 48, 52, 58, 63, 68, 74, 81, 86, 88, 93, 99, 103, 112, 114, 118, 124, 126, 130, 134, 139, 141; 5F/10, 13, 17, 22). Moreover, the undersigned notes that the decision about whether the claimant is able to work is one that is expressly reserved to the Commissioner (20 CFR 419.927(e)(1) and SSR 96-5p).

(ECF No. 13, PageID.61.)

### c. The Court should find no error in this evaluation

As Plaintiff filed her applications after March 27, 2017, the ALJ reviewed the subject MSS according to the standards provided in 20 C.F.R. § 404.1520c, which states that, "We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." 20 C.F.R. § 404.1520c(a). Instead, an ALJ must evaluate the persuasiveness of the medical opinions submitted, and articulate the findings using the following factors:

supportability, consistency, relationship with the claimant, and specialization, with

supportability and consistency being the most important.  20 C.F.R. § 404.1520c.[3]

### i.     Social restrictions, attention and concentration

Plaintiff first asserts that, rather than articulate why the social restrictions

opined by Drs. Qadir and Zenati are inconsistent with the record, the ALJ

addressed only attention and concentration.  (ECF No. 18, PageID.545.)  In so

doing, she cites to evidence in the record of her anxiety, paranoia, and poor social

functioning, and states:

> The ALJ has not explained how McKee can function in a social
> setting independently and on a sustained basis with no limitation as to
> her ability to interact with supervisors and even with brief and
> superficial contact with coworkers based on this record.  Nor has the
> ALJ explained why the evidence above listed contradicts the findings
> and limitations socially of Dr. Qadir.

(ECF No. 18, PageID.547.)

There is certainly evidence in the record supporting that Plaintiff has social

impairments, as she asserts, and the ALJ could have provided a more thorough

explanation as to why she discredited the social restrictions in the MSS, rather than

focusing more on evidence contradicting the concentration limitations espoused.

And Defendant's argument that under the new regulations for evaluating medical

opinions, an ALJ is not required to articulate how she considered each opinion

---

[3] I note that Plaintiff did not provide this standard in her motion for summary
judgment.

from a particular source (ECF No. 19, PageID.566-567), is not well taken.  Under

20 C.F.R. § 404.1520c(b)(1):

> Because many claims have voluminous case records containing many
> types of evidence from different sources, it is not administratively
> feasible for us to articulate in each determination or decision how we
> considered all of the factors for all of the medical opinions and prior
> administrative medical findings in your case record.  Instead, when a
> medical source provides multiple medical opinion(s) or prior
> administrative medical finding(s), we will articulate how we
> considered the medical opinions or prior administrative medical
> findings from that medical source together in a single analysis using
> the factors listed in paragraphs (c)(1) through (c)(5) of this section, as
> appropriate.  We are not required to articulate how we considered
> each medical opinion or prior administrative medical finding from one
> medical source individually.

Thus, it appears that the regulation applies more to the requirement that an ALJ

evaluate entirely separate opinions from one particular source (say, multiple

medical source statements), rather than individual opinions within a single

document, like the social limitations opined in the MSS here.

What is also clear, however, is that the ALJ thoroughly considered

Plaintiff's mental health impairments, including those affecting her social abilities,

throughout the RFC assessment, if not in direct relation to the subject MSS, and

stated generally that the MSS was inconsistent with the medical records discussed,

and that, while Plaintiff's impairments could reasonably be expected to cause the

symptoms alleged, her statements concerning the intensity and limiting effects of

those symptoms was not entirely consistent with the medical evidence.  (ECF No.

13, PageID.57-61.)  For example, the ALJ acknowledged the medical records

demonstrating Plaintiff's history of depression, anxiety, and panic attacks, but

noted that her providers often described her symptoms as mild or moderate, and

that she often reported the subsidence of symptoms with medication.  And Plaintiff

has not argued that the ALJ's representations of the evidence she cites is

inaccurate.  *See Athey v. Comm'r of Soc. Sec.*, No. 13-cv-12528, 2014 WL

4537317, at *4 (E.D. Mich. Sept. 11, 2014) (reasoning that it is appropriate to read

an ALJ's decision as a whole); *Rice v. Barnhart*, 384 F.3d 363, 370 n.5 (7th Cir.

2004).  Further, the ALJ credited Dr. Csokasy's opinion, which found less severe

social impairments, and incorporated significant social limitations into Plaintiff's

RFC.  (ECF No. 13, PageID.57-61.)  Plaintiff's citation to other evidence in the

record supporting her assertions should not lead the Court to a different conclusion.

*See Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 414 (6th Cir. 2011) (it is

not within the province of the Court to "reconsider facts, re-weigh the evidence,

resolve conflicts in evidence, decide questions of credibility, or substitute its

judgment for that of the ALJ"); *Blakley*, 581 F.3d at 406 (holding that "if

substantial evidence supports the ALJ's decision, this Court defers to that finding

even if there is substantial evidence in the record that would have supported an

opposite conclusion") (quotation marks and citation omitted).

### ii.     Daily activities

Plaintiff also takes issue with the ALJ's reference to her daily activities,

arguing that none of the activities listed correspond with her ability to function

socially.  (ECF No. 18, PageID.546-547 (citing ECF No. 13, PageID.60).)  But a

review of the ALJ's decision on the page cited reveals that she addressed daily

activities in an effort to contradict Plaintiff's claims of total disability, not to

discredit the social restrictions in the subject MSS specifically.  For example, the

ALJ stated:

> The above evidence is not entirely consistent with the claimant's
> allegations that she is unable to perform any work.  The medical
> record confirms that the claimant has severe mental impairments.  She
> subjectively complains of experiencing periodic panic symptoms, and
> her mental health providers often describe the claimant as exhibiting
> symptoms of depression or anxiety.  However, the record also
> indicates that the claimant's symptoms are generally of no more than
> mild or moderate severity (1F/7; 2F/7, 3F/96).  The claimant's mental
> status examinations are regularly and repeatedly unremarkable, and
> she exhibits normal memory and normal attention and concentration,
> even when she is complaining of increased anxiety and paranoia
> (3F/6, 13, 18, 23, 28, 33, 39, 48, 52, 58, 63, 68, 74, 81, 86, 88, 93, 99,
> 103, 112, 114, 118, 124, 126, 130, 134, 139, 141; 5F/10, 13, 17, 22).
> The claimant frequently reports that her medications are effective in
> controlling her symptoms, and she states that she is able to "handle"
> her alleged panic symptoms and go shopping in large stores (3F/84,
> 122, 129, 137; 5F/20).  At the hearing, the claimant testified that she
> doesn't do anything.  However, just a few months earlier, she told the
> consultative examiner that she continues to perform a number of
> activities that are consistent with basic work functions, including
> managing her personal hygiene, making meals, vacuuming, doing
> laundry and other light housework, reading, watching television, and
> playing video games (4F/2).  Taken as a whole, the record does not
> demonstrate that the limitations resulting from the claimant's

impairments are totally work preclusive, or greater than provided in
the above residual functional capacity assessment.

(ECF No. 13, PageID.60-61.)  There is nothing inappropriate about such an

analysis.  Indeed, "[t]he Social Security Administration and the 6th Circuit have

made clear that the ability to perform minimal daily activities does not equate to

the ability to perform work activities on a regular basis, 40 hours a week." *Coloske*

*v. Comm'r of Soc. Sec.*, No. 12-15198, 2014 WL 1048156, at *7 (E.D. Mich. Mar.

18, 2014) (Berg, J., *adopting report and recommendation of* Hluchaniuk,

M.J.).  *See also Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 377 (6th Cir.

2013) (evidence of minimal daily activities on a sustained basis).  However, "[a]n

ALJ may ... consider household and social activities engaged in by the claimant in

evaluating a claimant's assertions of pain or ailments." *Walters*, 127 F.3d at

532.  *See also* SSR 16-3p, 2017 WL 5180304 at *7-8; 20 C.F.R. §

404.1529(c)(3) (factors to be considered in evaluating the intensity, persistence,

and limiting effects of an individual's symptoms include daily activities).

Accordingly, the Court should find no error in the ALJ's evaluation of the

subject MSS.

## F.    Conclusion

Plaintiff has the burden of proof on statements of error.  *Walters*, 127 F.3d at

529 ("[D]uring the first four steps, the claimant has the burden of proof; this

burden shifts to the Commissioner only at Step Five.").  Plaintiff has not shown

legal error that would upend the ALJ's decision, and the ALJ's decision is supported by substantial evidence.  For the foregoing reasons, it is **RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary judgment (ECF No. 18), **GRANT** Defendant's motion for summary judgment (ECF No. 19), and **AFFIRM** the Commissioner of Social Security's decision.

## III.    PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health & Hum. Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.*  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an

objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc.*  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated:  February 1, 2022

Anthony P. Patti
UNITED STATES MAGISTRATE JUDGE